The case for oral argument at this panel is Singh v. Southwest Airlines Co. We thank Judge Hall for her willingness to participate by phone while she is recovering from surgery. Judge Hall, are you on the phone? I am here. Very good. Counsel for the appellant. Darren Quinn for Plaintiff Appellant's Attender, Singh. You may proceed. Good morning. May it please the Court. Good morning. Good morning, Mr. Singh. This perhaps may be one of the easiest cases you're going to be dealing with today. This is a diversity case, a personal injury case, and the first question concerns the duty by Defendant Southwest Airlines to warn plaintiff of some vomit that was approximately one foot away from the ropes where the passengers line up in front of Southwest's ticket counter. The reason I say it's one of the easier cases is because, one, it is a diversity case, so this Court has to apply the Supreme Court authority of California. The key Supreme Court case is Alcarez v. Fiche. Cases before that need to be looked at with suspicion unless, of course, they were cited with approval and discussed in Alcarez. Alcarez is the key case. Another reason why this case is one of the easier cases on the calendar is because the question of duty is reviewed de novo. So the fact that Judge Moskowitz may have found no duty makes no difference. This Court can look at it absolutely brand new. Well, in general, yes, but weren't there specific fact findings here with respect to control in which our review was a clearly erroneous review? Two issues on that. One is, yes, there were findings with respect to control. The findings on control were listed under the legal conclusions, not the factual conclusions, by Judge Moskowitz. Was it a legal issue or a factual issue? Listed under legal is how he has it listed under his conclusions of law. I'll ask you, is the issue of whether the airline controls this particular piece of the terminal floor a factual question or a legal question? In this case, it is a legal question because it is based on undisputed facts. When the facts are undisputed, it becomes a question of law. Now, there could be an argument that it is a mixed question of fact and law, and I've but that's still going to be entitled to de novo review where it is a mixed question. An example of this is, say, for instance, we have the fact that we have the vomit exactly, well, approximately one foot away from the ropes. That's a factual question. That's a factual issue that's been found by the Court. We have the factual finding that Southwest from time to time would clean up spills in front of its ticket counter. That's a factual finding. Is that in and of itself a determinative of whether the airline exercised control over that space rather than the terminal operator? If you take all of those control facts together, it establishes control as a matter of law. That's what plaintiff contends. And don't we also, I mean, to the extent that findings of fact include conclusions of law and to the extent that conclusions of law sweep in findings of fact, aren't we supposed to look at what they really are and not by the label? I think that's correct, but I think that the issue that comes up is my fallback position that it can be a mixed question of fact and law, which again is reviewed de novo. And again, if we have something that's undisputed, with the record on this appeal, I can't dispute things that Judge Moskowitz found unless, of course, it's wholly unsupported by the evidence. Or I've also argued that if I have admission directly from Southwest Airlines, then that's something I think the court should be able to consider as an undisputed fact in making its ruling as a matter of law. But I don't see anywhere that Southwest admits that it exercised control over the space where this vomit occurred. They did not admit control. They admitted the facts that established control as a matter of law. But why, you know, I think that what the district court was doing was in effect laying out the meats and bounds of the vomit and the stanchions and the injury and making a finding as to that area was not one that Southwest Airlines controlled. And you're saying as a matter of law, based on these facts, that he's wrong. Yes. So what I'm saying, to put it simply, if you have facts one through four and these facts are undisputed, Judge Moskowitz may look at those facts and say, I find that based on those four facts, that control has not been established. My argument is that this court can say, based on those four undisputed facts, that no, those four undisputed facts do show control as a matter of law. By applying Alcoraz. By applying Alcoraz. And there's another Supreme Court opinion as well, which is Rowland, which leads. What is the fact that you would point to, given how control is determined under the law, that would lead us to reverse the district court? Well, several things. In the opening brief, and I can point you to the pages, there is a section there that lists approximately 17, 18 different facts that are undisputed or found by Judge Moskowitz that we contend, plaintiff contends, establishes control. So just like the hypothetical I gave you just a moment ago, these are the four undisputed facts, Judge Moskowitz found no control. I'm asking this court to look at those undisputed facts, which I believe there's 16, 17 of them. They're on pages 37, 38 of the opening brief. And actually, it's 14 of them that I listed, so I was incorrect there. But if you take a look at those undisputed facts and facts that have been found by Judge Moskowitz, this court can say, yes, given these undisputed facts, control is found. Perhaps another way to look at this, let's assume, let's back this up, let's assume this was a 12B6 motion and we had facts set forth in the complaint. And the court, and let's say I had all of those 13 facts in there. And then the legal question would come up, have I alleged facts that establish control in duty as a matter of law, such that this action can go forward? Perhaps that's another way to look at it, but either way, I have undisputed facts. But let me back up for a second, because there is a reason why I said that this is one of the easier cases. This case, there's Civil Code Section 1714 that says everyone has a duty. And if you take a look at the California Supreme Court case of Roland v. Christian, and I had a discussion of this in the reply brief, it says the default is there's a duty. You apply the Roland v. Christian factors to determine if you need an exception to this duty. And so the Roland v. Christian factors aren't something that shows a duty. It's something to determine whether or not you should depart from the duty that's already statutorily imposed. I'm not going to go over those- You don't have any duty unless there's some kind of control or other legal responsibility though, do you? Well, take a look at the language of Section 1714. I'll refer to it in the reply brief. It's quoted by the California Supreme Court in Roland, but it says, quote, all persons are required to use ordinary care to prevent others from being injured as a result of their conduct, period. That's the rule. Now what the Supreme Court said, it says, this is in Roland, it says, it is clear that in the absence of a statutory provision declaring an exception to the fundamental principle enunciated in Section 1714, no such exception should be made unless clearly supported by public policy. A departure from this fundamental principle involves a balancing of a number of considerations. And then that is the Roland factors. Counsel, you might want to say something about the way. I became aware of it last night, and I let the defendant's counsel know. In the opening brief, on page 45, I cite California Code of Civil Procedures, Section 631A. And that was how it existed back at the time when the case was removed. Now, pursuant to the court rules, I have to attach a copy of the statute as in the appendix. If you look on page 56 of the appendix, you'll also see California Code of Civil Procedures, Section 631. 56 of what appendix are we talking about? Of your appendix? Yeah, appellant's opening brief. Okay. So I have your finger on two pages. One is on page 45. The other is on page 56. And I apologize for not recognizing this sooner. But the statute was amended in 2002. It was a noncontroversial amendment. It was suggested, I believe, by the judicial counsel. Are we looking at the amended version on 56 or the preamended? At this point, please look on page 56, which is the amended version. Okay. And what line are we looking at? Okay, take a look at subparagraph A. Okay. And it says, the right to a jury, the right to a trial by jury, as declared by Section 16 of Article 1 of the California Constitution, shall be preserved to the parties inviolate. In civil cases, a jury may only be waived pursuant to subdivision D. Subdivision D contains the same things that we had in the old Subdivision 631A. But Subdivision D lists the six different things. The only six ways that a jury can be waived. Not the way a jury is demanded. It's the way a jury is waived. What the Ninth Circuit, I don't believe, has had the opportunity to review, at least as I can tell from looking at the Lewis versus Time case. If you look on page 56 of the opening brief, which is the appendix, it cites the California Constitution. This is what was not cited in any Ninth Circuit decision I'm aware of. It says, trial by jury is an inviolate right and shall be secured to all. And the last sentence of that first paragraph in the Constitution reads, in a civil cause, a jury may be waived by the consent of the parties expressed as prescribed by statute, which of course is Section 631 A and D. Well, what's your argument? I mean, I'm still having trouble. Okay, the argument is- I understand what Judge Moskowitz did. He thought that it hadn't been appropriately requested in state court and even whether it was under Lewis or under the rules, that there was a waiver when it then came to federal court. No, you're right. When I jumped into this argument, I left out a critical link, and I apologize for that. The critical link I want to talk about is Federal Rule 81C. All right, before you leave 631, I'm trying to find out, what is the significant amendment that changes your position here? Well, I think it's not a substantive amendment on those, but I think that the issue is, it says in the new amendment on page 56 in Subdivision A, in civil cases, a jury may only be waived pursuant to Subdivision D. So two points on that. One is, you automatically have a right to- you automatically have a jury immediately. Okay, but the new language is in civil cases, et cetera? Yes, a jury may only be waived pursuant to Subdivision D. But D4, which has to do with this, you know, failure to announce requirement, that's basically the same. That's correct, that is the same. But the issue that comes up that I want the court to focus on, again, going back to Rule 81C of the federal rules, if in the state there is no express demand requirement for a jury, then you don't need to make one in federal court when it's removed. Now, of course, the judge can order the parties to make a demand if you're in such a state. And Georgia is one of those states. I believe California should be ruled on one, ruled as one as well. But the issue I want the court to focus on is express demands versus express waivers. Okay. And if you look at the Constitution and you look at California Code of Civil Procedures, Section 592, which, again, was not cited by the Ninth Circuit, in any opinion I'm aware of, and 631, particularly as amended, it makes it very clear that when an action is filed, you automatically have the jury. And the only way you're going to lose that is if you waive it. That's what the statute says. That's what 631 says. And when you say, how do you waive it, if you take a look at D-4, which is the old A-4, it says, by failing to announce that a jury is required at the time the cause is first set for trial. So if you take a look at the time period for removal, you file the complaint. You automatically have a jury at that point. The case is removed. Still, the action hasn't been set for trial. You still automatically have the right to a jury. Until you waive it, either expressly or by operation of law, pursuant to 631D, you have it. The only way you lose it is if you waive it. This is not a case where you demean it. Let me ask you a question about that. You might be right, but what about the case of Lewis versus Time, which, although it was before the amendment, basically dealt with the same, I think, the same issue we have here. So what do we do with that? Well, I think what you have to do is the court needs to look at that and say, Lewis versus Time didn't take a look at the language in the California Constitution. That's not cited. It didn't take a look at CCP Section 592. That's not cited. And a new thing that has now come up is the amendment to 631, which, although it's not a substantive change, I think certainly clarifies the fact that there was an automatic right to a jury trial immediately. Your Honors, if I may, I'd like to reserve the remainder for counsel. You may do so, counsel. We'll hear from the other side. Good morning, Your Honors. Joanne Rezzo appearing on behalf of Southwest Airlines. May it please the Court, like Appellant, I will address the issue of liability first and the jury waiver issue second. The sole liability issue for this Court is a determination of whether the district court erred in finding that Southwest did not control the area where the incident occurred. While the existence of a duty is a question of law, the determination of whether a defendant controlled an area in question is a question of fact. The Alcarez case, the case upon which plaintiff relies most heavily, confirms this point. When the California Supreme Court in Alcarez remanded that case to the state court, it stated, and I quote, it will be for the trier of fact to decide, based upon the evidence received at trial, whether defendants actually exercised such control. That's Alcarez at page 1171. Here, the district court properly interpreted the case law on the legal question of when a duty arises. A duty arises if you own, lease, or control the property. The sole remaining issue is whether the district court properly determined the factual question of whether Southwest controlled the portion of the airport where the incident occurred. Thus, this court should review the district court's decision for clear error on that issue. Both cases cited by Appellant and Southwest confirm that there can be no basis for liability unless Southwest owned, leased, or controlled the area where the incident occurred. The Alcarez case, the case relied upon heavily by Appellant, stands for the proposition that a defendant who lacks title to property may still be liable for an injury caused by a dangerous condition on that property if the defendant exercised control over the property at the time of the incident. As the Alcarez case made clear, the crucial element is control, and that was exactly the same issue that was at issue in this case. Contrary to Appellant's assertion, the facts of this case are not analogous to those in Alcarez. First, in Alcarez, prior to and at the time of the incident, the defendants maintained the lawn in front of their sidewalk from the apartment building all the way up to the sidewalk, including the strip of land that actually was owned by the government. Here, by contrast, Appellant failed to prove that Southwest controlled the area. The district court made specific findings that the area where Plaintiff slipped was not owned, leased, or possessed by Southwest. And, and I quote, Plaintiff has failed to prove by a preponderance of the evidence that Southwest exercised control over the area where Plaintiff fell. In making these factual determinations, the district court weighed the credibility of the witnesses and chose to accept the testimony of Harbor Police Officer Jason Adams regarding the location of the vomit. Officer Adams testified that the vomit was 19 feet away from Southwest's ticket counter, that it was outside of the area roped off for Southwest passengers, and critically, that it was in a common walkway used by passengers of other airlines, an area where a member of the public could walk in off the street and walk over to the cinnamon roll place or walk down to the gates and walk over. Further, there was testimony from numerous witnesses that not only did Southwest not rope that area off, it wasn't allowed to. It didn't have the right to rope that area off because the court required them to keep it open as a common walkway. Appellant has failed to demonstrate that these findings of fact are clearly erroneous. Indeed, every credible witness testified that the vomit was outside the area roped off for Southwest passengers. The only witnesses to testify to the contrary were Appellant and her daughter, two witnesses who, in the words of the court, lacked credibility in all material respects. Appellant presented no evidence that Southwest maintained that area. At best, she presented evidence that Southwest did occasionally clean up spills in front of their ticket counter, but there was no evidence that Southwest cleaned up spills beyond the 11-foot leased space that it leased, much less beyond the area that was roped off for passengers. Even if Southwest did occasionally clean up spills in front of their ticket counter, such conduct amounts to nothing more than neighborly maintenance, neighborly maintenance just like the maintenance that was seen in the Contreras decision where the court held that it wasn't sufficient to create control. As both the Alcarez court and the Contreras decision make clear, there can be no basis for liability based on this type of neighborly maintenance. The second distinction between this case and the Alcarez decision is that in Alcarez, after the incident happened, the defendant went up and built a fence enclosing not just their property, but the property that was actually owned by the government. They built a fence around the entire lawn. And here, there's no evidence that after the fact, Southwest took control or enclosed the area that where the incident happened. In fact, the evidence, uncontroverted evidence established that Southwest was not allowed to do that. Both testimony from Harbor Police Officer Jason Adams and from Heidi Greenwell confirmed that it simply was not allowed by the court. Now, the plaintiff, I'm sorry, appellant, in an effort to create control has tried to rely on measurements that were taken during a March 26, 2002 site visit that the court conducted as part of the bench trial. The court excluded the measurements that the appellant attempts to use in the appeal because there was evidence that the court required changes in the rope configuration after the September 11th attacks. So, the measurements with regard to the ropes that existed on that occasion are not before this court. Appellant has not challenged the district court's decision to exclude that evidence. Even if it were a part of the record, it doesn't establish control. Jason Adams, the witness whose testimony the court accepted as the most credible on the issue of the location of the vomit, testified that the vomit was located 19 feet, 2 inches from the ticket counter. The furthest most rope, even on March 26, 2002, was 18 feet from the ticket counter. Therefore, it was outside of the area roped off for Southwest customers. Another problem with the appellant's case is that she ignores the fact that she must prove that Southwest controlled the property at the time she was injured. The critical analysis is, did Southwest control it at the time she was injured? And she makes an important concession on this issue. She failed to prove that Southwest controlled it at the time. In her opening brief, she quotes the district court's opinion where the district court said, the area where plaintiff slept was not owned, leased, or possessed by Southwest Airlines. And then in the next sentence, appellant says, that's true. As of the time that I fell, that is true. That is not in error. And that's in the appellant's opening brief at page 37, footnote 3. Thus, appellant admits that Southwest didn't control the property at the time in question. The analysis should end there. I would, however, briefly like to address the ruling factors, if I may. Plaintiff has criticized the district. Your Honor? I'm not sure we need to hear that. I think that's pretty well briefed by both sides. Okay. I think we're very much interested in this jury waiver issue. Okay, Your Honor. Counsel, just so you understand where, at least where I'm coming from, it seems to me that counsel makes a pretty strong argument here that if under California law the jury trial is the flip side of the federal practice, why can't a state practitioner rely upon that provision since our own Rule 81c seems to recognize the reliance factor? If I look at 81c, there is a, let's just see if I can find that exact language here. If state law applicable in the court from which the case is removed does not require the parties to make express demands in order to claim trial by jury, they need not make demands after removal unless the court directs them. Give us a, help us out with that language. I can, I think, Your Honor. And the court, I'm sure, is aware that the Chandler case addressed this issue, the constitutional right to a jury trial. It's not just the California Constitution that preserves a right to a jury trial in civil cases, the federal constitution does also. And the federal, in Chandler what the court found was that the federal rules do not conflict with the federal, with the federal constitution's preservation of the right to a jury trial. And here the same is true. You have a right, and rights exist, and rights can be waived, and the right to a jury trial is a right like other rights, like the Fifth Amendment right or others that can be waived. And just like the Fifth Amendment right, you have to assert it. And here the same is true. Yeah. Help us out with 631. Exactly how did he waive it under 631? Well, under 631, 631 can be, is properly interpreted. Obviously, we've got the state statute. We also have our own rule. But let's take it from the state statute point of view. Under 631, a party is entitled to a jury trial. Right. But there are a number of ways that you can waive that. And one of the ways that you waive it is by not making an express demand for a jury trial. Within five days of the trial itself. No, no, no, Your Honor. Within five days of the date that the court first sets a date for a trial. So when it, and it often happens in the state court that it's very early in the proceeding that you have the case management conference, and the court says, you know, is the case at issue? Yes, the case is at issue. Okay, let's go ahead and set dates. And the court sets a date. And you have five days from that point. So it is very early in the case. All right. Had that happened in here, in this case? No. It never set for trial in the state court? No, it was removed. So it was removed. Correct. All right. But How does it apply that in the Federal context? Well, in the Federal context, the Rule 81c says that if an express demand is required in state court, then you have to make a demand in Federal court after removal. And here, an express demand is required in state court. You must make an express demand for a jury trial. It may be a semantic issue, but I thought he had a good point. Basically, you have a right under 631 to jury trial unless you waive it. Correct. However, you can waive it by failing to make an express demand. Rule 81 says if you don't have to make if you have to make an express demand, then, of course, you had to have made it in state court. The question I have, then, is 631d4, albeit an express demand rule, really a waiver rule, because that's the way it's set up in the framework of the California statute? I think not, Your Honor. I think it's an express demand rule. And if you look at the way that it's set forth, there are other ways that you can waive it by not depositing jury fees, things like that. But under subsection d4, it's very clear that you must step forward and say expressly, I want a jury trial. It's not failure to act. It is a required act on the part of the party seeking a jury trial. It is an express demand requirement. And 81c doesn't discuss, doesn't speak in terms of if an express demand is required within the first 30 days of trial. It doesn't say if an express demand is required prior to the time that you would have removed the action. It says if an express demand is required, then you have to make it in federal court within a certain number of days of having the case having been removed or the last pleading addressing the issues that address a jury trial. So Rule 81c, read in conjunction with California Civil Code Section 631d4, clearly indicates that as in the case of Lewis, an express demand is required and that the plaintiff waives it. And there's a large body of Ninth Circuit case law directly on point on this issue of waiver. In addition to Lewis v. Time? I'm sorry. I mean on the jury waiver issue and the fact that that law has been around for a long time. Most practitioners know that that law has been around for a long time. I think that Lewis v. Time is the only case addressing the express waiver issue within the state of California. Which basically says that California is an express waiver state. Correct. Although counsel says that there could be some distinctions given the timing of Lewis and the fact that it doesn't mention the Constitution and several other points. Could you address that? Those are really separate issues. The express waiver issue is one and the constitutional issue is another. Lewis I think addresses the express waiver issue and I don't think that there's been any amendment or change to the California Code Sections that affects the analysis of Lewis on the express demand issue. On the constitutional right to a jury trial issue, I think Chandler addresses that within the context of the Federal Constitution. And it's analogous to the California Constitution. I don't believe that there is a case that addresses the right to jury trial under the California Constitution. But Chandler by analogy, I mean the Federal Constitution guarantees the right to a jury trial in a civil case. So does the California Constitution. There are ways to lose that right if you don't expressly demand one under 631 D4 you lose the right to a jury trial. So I think Chandler is analogous and should be applied here. What would be the last moment at which Mr. Quinn could have requested a jury trial once he was in federal court? I believe it was 10 days after the removal was filed, which would have been September 20th of 1999. He didn't raise the issue until preparation of the pretrial order, which was in September of 2000, a year later. And there are cases, Ninth Circuit cases, where people, you know, step forward and said, I want a jury trial within 10 days, then 18 days. There's one that was 29 days of the date that they were supposed to have requested one and the court said no. Is there any manner in which he could have invoked that 631 D4 once he was in federal court? I don't believe so, Your Honor, because it's a state court rule of procedure and under ERIE the federal procedure would apply. So you're arguing that nothing really has changed since Lewis, that California is an express request state, notwithstanding the law? Yes. Yes, Your Honor. Unless the court has any further questions for me, I'll sit down at this time. Thank you, counsel. Mr. Quinn, you have some reserve time? You might want to focus on that jury issue. I think that's the one that we're most interested in here. Use your time any way you want, but I'm just suggesting that's an area that we're interested in. I'll take that suggestion. I think the key thing that needs to be said is the federal scheme is an express demand scheme. That's what Rules 38 and 39 talk about. Well, doesn't Lewis essentially say the same thing for the California scheme? It does. It does, looking at 631A4, but – End of story. No? No, because what I want the court to focus on is that the California scheme is an express waiver scheme. Federal express demand, you demand it to get it. California, you already have – I think, yeah, because it really says that you have a jury trial, but you have to demand it. You have a right to it, but you have to ask for it under D4. Well, you waive it under D4. The only way you can waive it is under D. Right. So perhaps an easy way is to look at Georgia. The only way it seems to me that we can entertain your argument is on the theory that somehow Lewis has been overtaken by amendments to the state of California statute. And I don't think any of the amendments have anything – have any relevance to that part of the Lewis case, which labels it as express. It's reluctantly that I say this. I believe that Lewis was wrongly decided because it did not talk about all of the relevant California law on the issue. A key thing it didn't mention was the California constitution, shall be had. It's the word shall. I add the other words slightly. How would that change it? Let's just say we agreed with you. Although, as you know, we personally as a panel can't agree with you because we're bound by a Ninth Circuit precedent unless it's overturned in bank. But let's say we did agree with you that you have to go to the constitution. That's the same as the U.S. constitution. You have a right to trial by jury. But you also have to, you know, you can do certain things if you don't dot your I's and cross your T's or you lose that right. So in that regard, I'm not sure how the constitution helps you. Well, I think if you compare the U.S. constitution with the California constitution, you will see a difference. I would urge the court to take a look at the first paragraph of the California constitution because it says it shall be secured by all, and it says in a civil case, a jury may be waived by the consent of the parties expressed as prescribed by statute. And then you get into 631. And that is an express waiver scheme. It is not a demand scheme. It's a waiver scheme. Some of it is by operation of law, I understand that. But it is a waiver scheme. And so I think this California is more analogous to Georgia. In my final 15 seconds, I would just say on the issue of control, you don't need total control or exclusive, just limited or some control is sufficient. Supreme Court found even a light shining on a sidewalk can show sufficient control for duty purposes. And finally, with respect to the fence issue, I would direct the court to Judge Moskowitz said that if you want to preserve the measurements taken on that date for the purposes of appeal, feel free to do so. This is on the record on page 170, which is what I've done. And that clearly shows that the ropes on the day we measured it, the vomit as admitted by Southwest Manager Heidi Greenwell, the vomit was inside those ropes as of that day. I'm out of time, Your Honor. Thank you very much, Counsel. Thank you. The case just argued will be submitted for decision and the court will adjourn. Thank you. I'll rise. This court, this session stands adjourned.
judges: Hall, O'scannlain, McKeown